**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON (PORTLAND)**

| | |
|---|---|
| EMANUEL MCCRAY, a/k/a "Trump Genius," *On Behalf of Himself and All Others Similarly Situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, *et al.,*<br><br>Defendants. | Case No. **3:26-CV-01193-IM**<br><br>PLAINTIFFS' RESPONSE TO META'S MOTION TO DISMISS, ECF 10 |

## I. INTRODUCTION

On August 19, 2026, Defendant Meta Platforms filed its Motion to Dismiss (MTD) for failure to state a claim. ECF 10.

The Complaint alleges that Defendant "**FAUCI** never acted alone," ECF 1 at ¶¶ 230-231, and included allegations of a colossal operation involving social engineering, that had eclipsed Germany's Nazi Party operations against humanity, where some people have decided the fate of humanity by arrogating to themselves the right to act against the will of citizens of the United States and their

representatives in their governments. See ECF 1 at ¶¶ 17-23, 35(6), 35(11), 78, 81-83, 136, 138, 228, 234d, 286, 311-312, 315, 330(2), 330(3), 331, 332, 335, 438 and Prayer for Relief.

According to Fox News,[1] during the July 29, 2026, hearing before the Senate Homeland Security and Governmental Affairs Committee, Defendant Fauci "invoked the Fifth Amendment 111 times, and declined to answer questions…about his handling of the COVID-19 pandemic."

On August 18, 2026, David M. Morens, a former National Institute of Allergy and Infectious Diseases (NIAID) employee and a Senior advisor to Defendant Fauci, pled guilty in federal court to a conspiracy charge stemming from a scheme to evade Freedom of Information Act (FOIA) requests and the Federal Records Act (FRA) in connection with coronavirus research grants.[2]

On information and belief, David Morens served as a career officer and Captain in the United States Public Health Service (USPHS) Commissioned Corps while he was working as a senior advisor to Defendant Fauci at the NIAID.

---

[1] Nick Viviani and Mark Richardson. *Dr. Anthony Fauci invokes Fifth Amendment 111 times, declines to testify at Senate hearing on COVID-19*. Fox Local. July 29, 2026. Available from https://www.livenowfox.com/news/fauci-testify-before-senate-wednesday-following-release-diary-pages.

[2] *Former Senior NIAID Official Pleads Guilty to Charges Connected to Concealing Federal Records During COVID-19 Pandemic.* U.S. Attorney's Office, District of Maryland. August 18, 2026. https://www.justice.gov/usao-md/pr/former-senior-niaid-official-pleads-guilty-charges-connected-concealing-federal-records.

According to the indictment, Morens and others conspired during the COVID-19 pandemic to defraud and commit several offenses against the United States after NIH terminated the May 27, 2014 grant, *Understanding the Risk of Bat Coronavirus Emergence*, which included subawards to the Wuhan Institute of Virology (WIV) and the East China Normal University, based on allegations that COVID-19 emerged from the WIV in Wuhan, China. See ¶ 32 of ECF 1-2 at 16.

Defendant Fauci was later identified in public records by Congress and the media as "Senior NIAID Official 1" named in the Morens Indictment.

From at least May 2020 through September 2020, FBI Agent David A. Miller (Miller), from the FBI's Newark, New Jersey Field Office, conducted an investigation of the May 27, 2014 grant for the years 2014-2019, and associated with NIAID's Grant Nos. 1-R01AI110964-01 (2014) through 2-R01AI110964-06 (2019). Erik J. Stemmy (Stemmy), Respiratory Diseases Branch, Division of Microbiology and Infectious Diseases NIAID/NIH/HHS, 5601 Fishers Lane, Room 8E18, Bethesda, MD 20892-9825, who was the "Program Officer" assigned to the 2014 Grant, volunteered to assist the FBI's investigation.

Among the questions presented by Miller was the following:

> "Were they also conducting Seemless Cloining and Assembly? From a review of their experimental details, it looks as if they were generating recombinant DNA of the viruses using WIV1 as the backbone but I could not determine if they were using Seemless Cloning techniques."

Stemmy replied: "I'm not aware of them using seamless cloning. Standard techniques for investigators in this field are to create cDNA molecular clones, which are then expressed in cull culture."

Ashley Sanders, Emily Linde, Michelle Bulls, Michael Lauer, Jodi Black, Deborah Kearse, and Peter Staley also cooperated with the FBI's investigation.

On June 18, 2026, then Director of National Intelligence, Tulsi Gabbard ("DNI Gabbard"), publicly claimed "Fauci Funded Wuhan Lab Research That Sparked COVID." See ECF 6.

The statement of DNI Gabbard was accompanied by 67 declassified indexed intelligence documents, and further coincided with the Morens' Indictment that the NIH made allegations that COVID-19 emerged from the WIV in Wuhan, China, and the FBI's interest in the 2014 Grant Award to EcoHealth Alliance and the sub-awards to China.

Contrary to Meta's very strong arguments set forth in its MTD, a malicious scheme, created and used by Meta and X to deliberately and intentionally target McCray, Trump Genius and McCray's family and his social media friends and followers as threats, is the crux of the issue presented by the Complaint. See ECF 1 at ¶¶ 16-19, 311-312, 315 and Prayer for Relief.

Meta and X have described this crucial issue as COVID-19 "misinformation" that causes "physical harm", notwithstanding the fact that McCray, Trump Genius

and McCray's family and his social media friends and followers never uttered such speech:




The image is self-explanatory and raises the following minimum questions sufficient to defend against the MTD at this early stage:

1. Why did Meta target Trump Genius for speech he did not utter?

2. Is Meta filing the MTD to avoid having to verify or explain its role in "secret police" style targeting on behalf of the global Communist and Socialist movements and Meta's participation in the global propaganda and psychological warfare campaign that led to the "release" of the virus from the WIV and the cover up

of the release of this lab created virus from the WIV?

3. What did the “fact-checkers,” who are included with Meta in the “Censorship Industrial Complex” alleged in ¶ 17, actually check in order to reach the conclusion that McCray and Trump Genius were propagating “false information” about COVID-19?

As alleged in ¶ 17, ECF 1, this malicious targeting, which employed the skill sets of “fact-checkers,” flowed from a global, conspiracy-type malicious support organization publicly known as the “Censorship Industrial Complex”:




The alignment of Meta and X with the behemoth represented by the “Censorship Industrial Complex” has made the contacts of Meta and X quite concrete. As such, these contacts are so continuous, systematic, systemic and perpetually threatening, such as the Sword of Damocles, as to render Meta and X

essentially at home in Oregon and the other States, Territories and Tribal Reservations subject to the jurisdiction of the United States, and the other Nations of the world. Meta and X are thus amenable to general and special jurisdiction.

## II. SECTION 230 IS UNCONSTITUTIONAL AS ARGUED BY META

In its MTD, Meta argues a paradox that claims 47 U.S.C. § 230 ("Section 230") gives the Corporation powers that exceeds the constitutional powers given to Congress to enact Section 230. This is a very bad and extremely poor way to interpret Section 230.

If, through Section 230, Congress gave powers to Meta and its human agents to censor American citizens residing in the United States on behalf of China's Communist Party leader Xi Jinping and his Communist, Marxist, Socialist, Nazi, British, American and European Comrades, then Congress has violated the First and Fifth Amendments at a minimum, and 47 U.S.C. § 230 is unconstitutional on its face and as applied to the well-pleaded facts alleged in the Complaint.

Meta further claims to have engaged in content "moderation," while utterly failing to explain how the corporation could lawfully, through Section 230, moderate the speech of McCray and his anti-Xi Jinping human rights activists as COVID-19 misinformation. See ECF 10 at 6-9.

Meta's "content moderation" arguments are nothing more than its go to standard boilerplate templates. No effort was made to address the face of the social

media post. Moreover, the case law Meta relies upon is out of place, not pertinent and a sham. The cited case law is clearly meant to deceive and misdirect.

Meta's targeting of McCray was extremely heavy and for some reason not explained in its MTD, and included reference to "YouTube" as part of the targeting:




Plaintiffs' position is very simple and narrow: Congress, through Section 230, did not deny, displace, disrupt or destroy the presumption of innocence that emanates from the face of the 1776 Unanimous Declaration of Independence and from the face of, at least, the Preamble and the First, Second, Fourth, Fifth, Sixth, Ninth, Tenth and Fourteenth Amendments of the Constitution of the United States.

Plaintiffs further believe Congress, through Section 230, did not turn innocent First Amendment speech, particularly speech which has never been spoken, into

content creation and publication, conduct, behavior and viewpoint subject to foreign and domestic Government censorship and targeting.

The limits and boundaries of Section 230 do not cloak the human actors in charge of Meta's affairs with power and authority to censor and target American citizens on behalf of China's Communist Party and its leader, Comrade Xi Jinping. Meta cites no case that Section 230 does this.

*A fortiori*, 47 U.S.C. § 230 does not provide Meta with immunity from suit or a defense to liability, where, as here, the humans in charge of Meta and X:

(1) Created the "COVID-19" content at issue in this litigation;

(2) Were the publishers of the "COVID-19" content at issue in this litigation;

(3) Were the speakers of the COVID-19 content they created, which is at issue in this litigation;

(4) Were the censors of the COVID-19 content they created, which is at issue in this litigation; and

(5) Were the creators, publishers, speakers and censors of the COVID-19 content which is at issue in this litigation, and which they attached to McCray's First Amendment speech and association involving the Oscar for censorship going to mainland China's Chinese Communist Party leader Xi Jinping; which never mentioned COVID-19.

The actions and conduct of Meta and X as COVID-19 content creators, publishers, speakers and censors of the COVID-19 content they created and used to invade and occupy McCray's social media digital realm, represents a spitting image

replica of the infamous totalitarian boast, “Find me a man and I’ll find you the crime” (often stated as “Show me the man and I’ll show you the crime”), which was widely attributed to Lavrentiy Beria, the ruthless secret police chief under “Communist-Socialist Soviet dictator” Joseph Stalin.

Joseph Stalin was also the tyrant who, along with the United Kingdom, invaded the neutral State of Persia/Iran in August 1941 and forced Reza Shah Pahlavi to formally surrender.

This UK-Soviet Communist invasion led to the Azerbaijan crisis of 1946 which was sparked by the refusal of Soviet dictator Joseph Stalin to relinquish occupied Iranian territory; and the Islamic Revolution of November 4, 1979, where 66 Americans, including diplomats and other civilian personnel, were taken hostage at the Embassy of the United States in Tehran; with the majority of them being held hostage for 444 days under gross inhuman conditions.

Meta and X, without just cause and lawful excuse, deliberately and maliciously invaded McCray’s social media space and falsely planted COVID-19 content in his space to justify their Communist-Socialist state police censorship and targeting style actions.

McCray and his family members, Trump Genius, and McCray’s social media friends and followers were clandestinely “targeted,” from abroad, by Meta and X in furtherance of their secret service to those who created, managed and controlled the

COVID-19 pandemic throughout the United States and around the world. In this very narrow context, personal jurisdiction and a claim for relief is sufficiently alleged as set forth and supported in the complaint.

Here, Meta and X, by their own device, are the invaders and the occupiers of McCray's social media digital realm, as it applies to the Oscar for censorship going to China's Communist Party leader Xi Jinping and his Communist, Marxist, Socialist, Nazi, British, American and European Comrades.

As applied here, 47 U.S.C. § 230 does not provide Meta and X immunity from suit or a defense to liability for the conduct alleged in the complaint. Meta and X worked hand-in-hand with Fauci and Communist China's WIV to cause the chronic infections inflicted upon the world's populations.

In the alternative, the Section 230 is unconstitutional on its face and as applied if this statute does in fact empowers Meta to target a citizen of the United States on behalf of the Communist Leader of one of America's adversary.

## III. LEGAL STANDARD

### A. General

Meta has moved to dismiss under Rule 8(a) and for failure to state a claim, Rule 12(b)(6). There are at least 7 bolts holding Meta's MTD paradox together; all are missing their locking nuts and cotter pins:

Bolt 1: Meta's fictional person and its algorithms have no native volition;

Bolt 2: Human agents targeted McCray's anti-Xi Jinping speech;

Bolt 3: The post was targeted using a fraudulent pretextual "COVID-19" theme to mask the targeting as "content moderation;"

Bolt 4: The tweet itself is visual evidence of an objective fraud perpetrated by Meta's human agents;

Bolt 5: The final judgment of violation of community standards was outsourced to "fact-checkers," which shatters "editorial discretion";

Bolt 6: Section 230 must either be constitutional or unconstitutional; and

Bolt 7: Section 230, as argued by Counsel for Meta, grants infinite statutory power to a fictitious person which exceeds the powers of the humans that enacted Section 230; the rights of living humans; and the limits and boundaries of the Due Process Clause.

Meta and X are alleged to have engaged in a clandestine intelligence propaganda and psychological warfare-type targeting operation that became uncovered from the sheer weight of the clandestine methods of its abusive control and psychological manipulation to prevent and guard against the anti-government activities of individuals deemed to be "enemies of the State."

This is classic Communism and Socialism and a classic "secret police" type operation. Thus, the MTD border on an abuse of Rule 11 of the Federal Rules of Civil Procedure.

"Federal courts are courts of limited jurisdiction," and "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

Federal courts also adhere to the "principle of party presentation" in the federal "adversarial system of adjudication." *Clark v. Sweeney,* 607 U. S. 7, 9-10 (2025) (*per curiam*) (quoting *United States v. Sineneng-Smith,* 590 U. S. 371, 375-376 (2020)).

Service providers are liable for "the creation of content." 47 U.S.C. § 230(e); *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1163 (9th Cir. 2008) (*en banc*).

A Plaintiff's 'theory of liability must be examined by the Court to determine whether a defendant is a publisher or speaker. *Calise v. Meta Platforms, Inc.,* 103 F.4th 732, 740 (9th Cir. 2024) (quoting *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1101 (9th Cir. 2009)).

**B. The Court Has Personal Jurisdiction**

The Court's exercise of personal jurisdiction over Meta rests upon a simple consideration—how Meta and its material censorship support to the global COVID-

19 pandemic became so inextricably tied to Fauci and the funding mechanisms of the United States' that financially supported the scientists who created and intentionally released a virus created in a lab, which is now being classified by President Trump and some members of Congress as a "lab leak."

McCray was "targeted," Communist secret police-style, from abroad. McCray did nothing wrong under the Constitution and laws of the United States. McCray only supported the human rights ideas and speech that suggested that Chinese Communist Party leader Xi Jinping was imminently qualified, to have bestowed upon him, the Oscar for censorship.

In the Ninth Circuit and the State of Oregon, McCray bears the burden of establishing jurisdiction is proper. *Martinez v. Aero Caribbean,* 764 F.3d 1062, 1066 (9th Cir. 2014); *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008); *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 (9th Cir. 1990); *State ex rel. Circus Circus Reno, Inc. v. Pope*, 317 Or 151 (1993) (applying Oregon Rules of Civil Procedure (ORCP) 4).

McCray need only make a "prima facie showing of jurisdictional facts." *Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A.,* 972 F.3d 1101, 1106 (9th Cir. 2020) (citations omitted).

To make a "prima facie showing," McCray needs to show facts that, if true, would support jurisdiction over the defendant. *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016).

To determine whether McCray has met his burden, "uncontroverted allegations in the complaint must be taken as true, and any conflicts between the facts contained in the parties' affidavits must be resolved in McCray's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588-89 (9th Cir. 1996) (quoting *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir. 1989)).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston,* 780 F. 3d 1206, 1211 (2015), (internal citations omitted) (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 125, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014)

ORCP 4 governs general and specific jurisdiction. The targeting attack carried out by Meta and X was supported and executed through Meta's Prineville Data Center, located at 735 SW Facebook Way, Prineville, OR 97754, which is part of Meta's global infrastructure for its technologies and services and future immersive experiences like the "metaverse — the next chapter of the internet."

Meta's Prineville Data Center is a hyperscale data center that includes colocation and Infrastructure as a Service (IaaS); and was built exclusively to run

Meta's own applications, including Facebook, Instagram, WhatsApp, and its artificial intelligence workloads.

Meta's Prineville colocation and IaaS data center targeted McCray through Oregon's primary hub for major data center operators providing third-party colocation services located in the Portland-Hillsboro area. See ECF 1, ¶35 at page 38, identifying the "Pittock Block" and the "Digital Fortress/Northwest Access Exchange (NWAX) and the Hillsboro Data Center Hubs."

Additionally, Amazon Web Services (AWS) operates a massive, Hyperscale Cloud, public IaaS cloud region in Morrow County and Umatilla County, Oregon.

**C. The Complaint Does Not Fail To State A Claim**

McCray was "targeted." See ECF 1, ¶¶ 16-19 at pages 24-28. The complaint is now being attacked by a Rule 12(b)(6) motion to dismiss.

The complaint describes the crucial issue under attack by Meta as being that McCray, through Trump Genius, uttered COVID-19 "misinformation" that could cause "physical harm", notwithstanding the fact that McCray, Trump Genius and McCray's family and his social media friends and followers never uttered such COVID-19 speech.

In this narrow light, Meta and X acted as law enforcers for Defendant Fauci and the other global scientists who supported a "natural origin" public health narrative.

The Court's enquiry, like its decision whether to exercise personal jurisdiction over Meta, rests upon the same simple consideration—how Meta and its material censorship support to the global COVID-19 pandemic became so inextricably tied to Fauci and the "lab leak" virus funding mechanisms of the United States.

The complaint alleged a malicious scheme, created and used by Meta and X to deliberately and intentionally target McCray, Trump Genius and McCray's family and his social media friends and followers. These allegations are the crux of the issue necessary to determine dismissal for failure to state a claim. See ECF 1 at ¶¶ 16-19, 311-312, 315 and Prayer for Relief.

Thus, to survive a motion to dismiss, McCray's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"In reviewing a Rule 12(b) (6) motion, a court must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true." *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000).

While McCray's complaint did not need to contain detailed factual allegations, McCray was, nevertheless, under an obligation to provide the grounds of his entitlement to relief by going beyond "labels and conclusions, and a formulaic

recitation of the elements of a cause of action…. Factual allegations must be enough to raise a right to relief above the speculative level….” *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

There is no doubt Meta’s human agents did something. The face of the post corroborates this assertion. Meta claims it carried out “content moderation.” Meta makes no effort to shed light on what it did.

Instead, Meta makes a very hard pivot to Rule 8(a) to make a claim that the Complaint must be dismissed for failure to state a claim, coupled with being “sprawling” “confusing and conclusory.”

Those descriptions matched precisely the pandemic’s narratives and Meta’s own “content moderation” of speech that was never uttered.

The Complaint further alleges in ¶ 20 that Meta’s human CEO, Mark Zuckerberg, confirmed he had converted the corporation into a COVID-19 censorship machine on demand from the Biden Administration and further used the opportunity to explain his controversial role in the interference of the 2020 Presidential elections.

Meta’s Rule 8(a) and Rule 12(b)(6) arguments, made through its human Counsel, are at odds with Meta’s own CEO.

The FBI alleged in the Morens' Indictment that the NIH was reviewing allegations that the WIV "released" the coronavirus responsible for the COVID-19 pandemic.

Meta provided material support to Fauci and the global human networks that caused McCray and millions of humans to become chronically infected with a virus that was "released" from the WIV in Communist-controlled Wuhan, China. Meta joined the group's attempts to cover up the laboratory release.

Meta's liability is analogous to the driver of a getaway car who waits around the corner while his partners in crime rob the bank. Here, Meta's role was to assist Fauci and others in getting away with mass homicide and attempted mass homicide.

Perry Mason once said: "Murder is usually very simple. It's the getting away with it that's real complicated and tricky."

## CONCLUSION

The Court should deny Meta's motions.

Submitted respectfully,

Dated: August 19, 2026

s/ Emanuel McCray
Emanuel McCray
*Plaintiff, Pro Se*