Nicholas E. Wheeler, OSB No. 044491
E-mail: nick@nickwheelerlaw.com
LAW OFFICE OF NICHOLAS E. WHEELER, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

Attorney for Defendant X Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

EMANUEL MCCRAY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

Defendants.

Case No. 3:26-cv-01193-IM

**DEFENDANT X CORP.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), counsel for X Corp. certifies that he made a good faith effort to confer with Plaintiff by telephone, but Plaintiff did not make himself available.

## MOTION

Defendant X Corp. moves to dismiss the claim asserted against it in Plaintiff's Complaint (ECF No. 1) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). In the alternative, X Corp. moves under Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a) to sever the claim against X Corp. and transfer it to the United States District Court for the Northern District of Texas, the forum required by X Corp.'s governing Terms of Service. If the Court reaches the merits, X Corp. moves to dismiss with prejudice under Fed. R. Civ. P. 8(a) and 12(b)(6), and to strike the

Complaint's class allegations under Fed. R. Civ. P. 23(d)(1)(D) and 12(f). This motion is supported by the following memorandum of law, the Declaration of Megan Scolari ("Scolari Decl.") and its exhibits, and the pleadings and records on file.

## POINTS & AUTHORITIES

### I. Introduction

Plaintiff, a Washington resident proceeding *pro se*, filed a 217-page complaint in this Court, captioned "Assault and Battery[,] SARS-CoV-2 'Lab-Leak' Chronic Infection[,] Class Action." Compl. at 1. On behalf of a putative class of every American who has contracted COVID-19 since December 2019, he seeks "not * * * less than $400 *trillion*." *Id.* ¶¶ 30–31; *id.* at 213 (emphasis added). The Complaint pleads a single count, "Assault and Battery, 42 U.S.C. § 233(e)," against "the United States and All Other Defendants." *Id.* at 167. As best X Corp. can discern, Plaintiff's theory is that federal public-health officials negligently allowed SARS-CoV-2 to enter the United States. He contends that X Corp., along with Meta Platforms, Inc., "major media networks," and "the Intelligence Community," acted "in 'medical' confederation with [Dr. Anthony] Fauci" by participating in a "Censorship Industrial Complex." *Id.* ¶ 16; *id.* at 213. Among other relief, Plaintiff asks the Court to "[d]eclare that the COVID-19 pandemic represented a crossover between ritual human sacrifice and historic human sacrifice involving 'medical' intent." *Id.* at 213.

The Complaint fails as to X Corp. for multiple independent reasons. As a threshold matter, the Court lacks personal jurisdiction over X Corp. X Corp. is a Nevada corporation headquartered in Texas, and the only jurisdictional allegation directed at it is that the alleged "censorship operated on and through interstate telecommunication nodes in Portland, OR." *Id.* ¶ 34. The fact that internet traffic passes through routing equipment located in Oregon is not purposeful conduct by X Corp. aimed at the State. But even if the Court were to somehow find the necessary minimum contacts, Plaintiff's claim against X Corp. does not belong in this Court. By consenting to X Corp.'s Terms of Service, Plaintiff agreed that all disputes related to the X



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

service would be brought exclusively in Texas. Under *Atlantic Marine*, that agreement requires transfer to the Northern District of Texas under 28 U.S.C. § 1404(a).

The Complaint would fail on the merits even if it were properly before this Court. To start, the Complaint is the kind of prolix and largely unintelligible pleading that Rule 8 forbids. Moreover, the only claim it asserts, under 42 U.S.C. § 233, provides a cause of action against the United States, and only the United States, for the conduct of Public Health Service personnel. Plaintiff himself pleads that the United States is "the sole entity liable." Compl. ¶ 6. Even if the statute could somehow apply to a private entity, like X Corp. – Ia reading that is flatly contradicted by the statute – Plaintiff alleges no harmful or offensive contact by X Corp. at all, so he states no assault or battery claim in any event. To the extent Plaintiff challenges X's handling of user content – and there is no factual support for such a challenge in his Complaint – Section 230 of the Communications Decency Act and the First Amendment bar the claim. Plaintiff, as a *pro se* litigant, also cannot represent a putative class. Because no amendment could cure these defects, the Court should dismiss the claim against X Corp. with prejudice if the Court reaches the merits.

## II. Background

### A. The Complaint

Plaintiff resides in Vancouver, Washington, and alleges that he "works in Oregon and Washington." Compl. ¶ 4; *id.* at 216. He sues the United States; Dr. Fauci; the Centers for Medicare & Medicaid Services; Atlas Genomics, LLC, a Seattle laboratory that allegedly tested him for COVID-19; Meta Platforms, Inc.; and X Corp. *Id.* ¶¶ 6-15.

The Complaint's narrative ranges from the 1902 Biologics Control Act to the Justinianic Plague, the Nuremberg trials, King George III's alleged tolerance of smallpox, an episode of *Perry Mason*, and Plaintiff's separate arbitration dispute with Microsoft. *See, e.g.*, Compl. ¶¶ 24, 56, 230, 317, 329, 332–36. Parsing through the 217 pages it appears that Plaintiff's core theory is that federal officials negligently failed to prevent SARS-CoV-2 from entering the country and



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

failed to "pre-position[]" diagnostics, causing Plaintiff and the putative class "chronic infections." *Id.* ¶¶ 229, 232–34, 316–18. Plaintiff's few allegations that pertain to X Corp. in the Complaint refer to (1) "conspiracy-type participation" in a "COVID-19 pandemic 'Censorship Industrial Complex' deployed by the United States and other Nations"; (2) "defective designs of their social media products"; and (3) "the failure of the United States to provide adequate warnings" about those products. *Id.* ¶ 16. Elsewhere X Corp. is named only in passing, as one of many "social media platforms such as Defendants Meta and X Corp" that allegedly promoted a "false narrative." *Id.* ¶¶ 311–12, 315; *id.* at 213.

The Complaint identifies a single instance of Plaintiff's own online activity: a post from his "Trump Genius" (@trumpgenius2) account dated April 28, 2021. *Id.* ¶¶ 18-19. On its face, that post complains that "@fbnewsroom" – a Facebook account – "blocked me from sharing this post." It also reproduces a Facebook notice stating that the content violated Facebook's "Community Standards on misinformation." *Id.* ¶ 18. The post does not describe any action by X Corp. As to X Corp., it shows only that Plaintiff maintained an account on X and was able to publish his post there.

The Complaint's jurisdictional allegation as to X Corp. states in full that specific jurisdiction "comports with the Due Process Clause because the censorship operated on and through interstate telecommunication nodes in Portland, OR," which "act as primary connectivity hubs for Vancouver, WA," and through which "Vancouver-Portland traffic is frequently routed." *Id.* ¶ 34. Plaintiff also asserts "conspiracy-type conspirator and co-conspirator jurisdiction." *Id.* ¶ 32. Before filing suit, Plaintiff submitted a Standard Form 95 administrative tort claim to the National Security Council, the White House Office, and both Houses of Congress. That claim does not mention X Corp. *See* Compl., Ex. 1 (ECF No. 1-2 at 2).

// // //

// // //



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

**B. The X Platform and the X Terms of Service**

X Corp. operates X, an online platform where users like Plaintiff can make and share posts. Plaintiff created his X (then Twitter) account under the handle @trumpgenius2 on August 31, 2017. Scolari Decl. ¶ 8. In creating and using his X account, Plaintiff agreed to X Corp.'s Terms of Service ("Terms"). Scolari Decl., Ex. A at 2 ("These Terms of Service ('Terms') govern your and other users' access to and use of the services * * * By using the Services you agree to be bound by these Terms."); *id.* at 11 ("We may revise these Terms from time to time * * * [T]he most current version of the Terms * * * will govern our relationship with you. * ** By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."). When Plaintiff signed up for his account, the Terms were hyperlinked on the Twitter sign-up page in contrasting blue text near the "Sign up" button, with a reminder that "[b]y signing up, you agree to the Terms of Service and Privacy Policy[.]" Scolari Decl. ¶ 10.[1]

At all relevant times, the Terms have provided that X Corp. may change its Terms, and that a user's continued access to or use of X constitutes acceptance of the revised version. Scolari Decl. ¶ 12. It has been X Corp.'s longstanding business practice to notify users of material revisions through a notification prompt that appears when the user logs into his account. *Id.* ¶ 13. Recent notification prompts have read:

> "**Updates to our Terms of Service and Privacy Policy**
>
> We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them. If you want to learn more about these changes, head to the X Privacy Center."

Scolari Decl. ¶ 15 & Ex. D. The words "Terms of Service" in the prompt appeared as a blue hyperlink to the updated Terms, and the user was asked to click a button labeled "Got it." *Id.*

[1] The Court may consider the Terms, attached as Exhibit A to the Scolari Declaration, without converting this motion into one for summary judgment. In resolving X Corp.'s challenge to personal jurisdiction and its motion to transfer, the Court may consider evidence outside the pleadings. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139-40 (9th Cir. 2004).



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

¶¶ 16-17 & Ex. D. X Corp.'s business records reflect that, on December 16, 2025, Plaintiff acknowledged receipt of this notification prompt advising him that X Corp. had updated its Terms to version 21, which was the last version to include material changes to the Terms prior to the filing of the Complaint. *Id.* ¶¶ 14, 18. X Corp.'s records further reflect that Plaintiff has maintained an active X account since he created it and has continued to use the platform since those revisions became effective. *Id.* ¶ 19.

The Terms in effect when Plaintiff filed his Complaint (version 22) (the "Relevant Terms") contain a Texas choice-of-law clause and a mandatory forum-selection clause. The clause applies to all disputes "related to" the "Terms" or the "Services," "including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Services," "regardless of whether a dispute or any claims * * * are based in contract, tort, statute, common law, or otherwise." Scolari Decl., Ex. A at 11. Such disputes "shall be brought and must proceed exclusively in the federal or state courts located in Wichita County or Tarrant County, Texas." *Id.*[2]

## III. Discussion

### A. The Court Lacks Personal Jurisdiction Over X Corp.

A court may choose among threshold grounds for dismissal without first reaching the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate" and "cannot simply rest on the bare allegations of its complaint." *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks omitted). Here,

[2] Whereas the forum selection clause in version 21 states that claims "shall be brought and must proceed exclusively in the federal or state courts located in Tarrant County, Texas[,]" the Relevant Terms state that claims "shall be brought and must proceed exclusively in the federal or state courts located in Wichita County or Tarrant County, Texas." Wichita County and Tarrant County, Texas are both located within the territory covered by the U.S. District Court for the Northern District of Texas.



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

personal jurisdiction resolves this motion as to X Corp., as Plaintiff cannot establish either general or specific jurisdiction.

**1. X Corp. is Not Subject to General Jurisdiction in Oregon**

A corporation is subject to general jurisdiction only where it is "essentially at home." For a corporation, that is ordinarily its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 924 (2011); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). X Corp. is incorporated in Nevada, and its principal place of business is in Texas. Scolari Decl. ¶ 20; Compl. ¶ 14. Plaintiff does not allege that X Corp. has any presence in Oregon, let alone one so substantial as to make this the "exceptional case" in which a corporation is at home elsewhere. *Daimler*, 571 U.S. at 139 n.19. Nor is the fact that Oregonians can use X enough: a corporation that "operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n. 20.

**2. X Corp. is not subject to specific jurisdiction in Oregon**

Specific jurisdiction requires that (1) the defendant "purposefully direct[ed]" its activities at the forum or "purposefully avail[ed]" itself of the privilege of conducting activities there; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction is reasonable. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Plaintiff bears the burden on the first two prongs. *Schwarzenegger*, 374 F.3d at 802. The relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum State," not from contacts of "the plaintiff or third parties." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). "[B]are bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (citation omitted).

Plaintiff cannot carry his burden to establish jurisdiction. His only theory of jurisdiction as to X Corp. is that the alleged "censorship operated on and through interstate



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

telecommunication nodes in Portland," because internet traffic between Vancouver, Washington, and the rest of the world "is frequently routed" through Portland-area data centers operated by third-party carriers. Compl. ¶ 34. That allegation is unsupported in the Complaint. But even if assuming its truth for the purposes of this Motion, it describes the architecture of the internet, not any relevant conduct by X Corp. If routing traffic through a regional exchange were enough, every online service would be subject to suit in every state that hosts an internet hub. Due process does not permit that result. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (maintaining a website accessible in the forum is not, by itself, express aiming). Another court in this Circuit rejected a comparable theory against X Corp., explaining that "[t]he contacts between X Corp. and [the forum] must be those that X Corp. creates, not the independent activity of other persons," and that the complaint "lack[ed] the allegations necessary to establish specific jurisdiction over X Corp." *Geegieh v. Unknown Parties*, No. CV-24-02993-PHX-SMB, 2025 WL 1769766, at *4 (D. Ariz. June 26, 2025) (rejecting argument that "X Corp. operates a nationwide platform accessible in Arizona"). Plaintiff does not allege that X Corp. took any action concerning him, his content, or his account in Oregon or anywhere else. Moreover, he himself is not an Oregon resident. Compl. ¶ 4. And the only moderation decision he describes was made by a different social media company, not X Corp. *Id.* ¶ 18.

Plaintiff's invocation of "conspiracy-type conspirator and co-conspirator jurisdiction," Compl. ¶ 32, does not change the analysis. The minimum-contacts inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. Even assuming the viability of a conspiracy theory of jurisdiction, it could not rest on the conclusory assertion that X Corp. participated in a "Censorship Industrial Complex," which pleads no agreement at all, let alone one aimed at Oregon. *See Swartz*, 476 F.3d at 766; *see also Ukrvaktsina v. Olden Grp., LLC*, Civ. 10-6297-AA, 2011 WL 5244697, at *8 (D. Or. Oct. 30, 2011) ("[A] great deal of doubt surrounds the propriety of personal jurisdiction based on a conspiracy theory in the Ninth Circuit.") (internal



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

quotation omitted). Indeed, there is no allegation of censorship by X Corp. at all, and the allegation in the Complaint that does pertain to X Corp. shows that Plaintiff was able to post his views on the X platform. *See* Compl. ¶ 18 (reproducing Plaintiff's post on X stating that "@fbnewsroom blocked me from sharing this post").

Finally, Plaintiff's claim does not "arise out of or relate to" any Oregon contact by X Corp. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–62 (2021). His alleged injury appears to be a COVID-19 infection, which he attributes to federal public-health failures. *See* Compl. ¶¶ 229, 318. Nothing connects that alleged injury to X Corp.'s conduct in Oregon – nor could it. The claim against X Corp. should be dismissed under Rule 12(b)(2).

### B. Alternatively, the Claim Against X Corp. Should Be Severed and Transferred to the Northern District of Texas Under 28 U.S.C. § 1404(a)

If the Court does not dismiss for lack of personal jurisdiction, it should enforce the parties' forum-selection clause by severing the claim against X Corp. and transferring it to the Northern District of Texas. Under settled Ninth Circuit law, a forum-selection clause is presumptively valid, and Plaintiff bears a heavy burden to avoid it. Plaintiff cannot carry that burden.

#### 1. Forum-Selection Clauses are Presumptively Valid in the Ninth Circuit

Federal law governs both the interpretation and the enforceability of a forum-selection clause in federal court. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081, 1083 (9th Cir. 2009) (per curiam); *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). Under federal law, "[a] forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is unenforceable." *Doe 1*, 552 F.3d at 1083 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)); *see also Murphy*, 362 F.3d at 1140 (explaining that forum-selection clauses "should be honored 'absent some compelling and countervailing reason'" (quoting *Bremen*, 407 U.S. at 12, 15, 17)).



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

A forum-selection clause therefore controls unless the resisting party makes a "strong showing" that (1) "the clause is invalid due to 'fraud or overreaching'"; (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision"; or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." *Sun*, 901 F.3d at 1088 (quoting *Bremen*, 407 U.S. at 15, 18).

Where, as here, the clause reflects an agreement to litigate in another federal forum, it is enforced through a motion to transfer under 28 U.S.C. § 1404(a), and the presumption in favor of enforcement is stronger still. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59 (2013). "[W]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. As the Supreme Court explained, a valid forum-selection clause changes the ordinary § 1404(a) analysis in three ways. The plaintiff "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." The plaintiff's "choice of forum merits no weight." And the private-interest factors are deemed to weigh "entirely in favor of the preselected forum," so that only public-interest factors remain, and those "will rarely defeat a transfer motion." *Id.* at 63-64. A motion to enforce a valid forum-selection clause should be denied "[o]nly under extraordinary circumstances unrelated to the convenience of the parties." *Id.* at 62, 64. In deciding a motion under § 1404(a), the Court "may consider facts outside of the pleadings," and the pleadings "need not be accepted as true." *Murphy*, 362 F.3d at 1138; *Doe 1*, 552 F.3d at 1081.

**2. Plaintiff Agreed to a Valid, Mandatory Forum-Selection Clause**

Plaintiff agreed to the Relevant Terms. He accepted the Terms, including X's right to revise them, when he created his account. He clicked "Got it" on a prompt announcing version 21 of the Terms, and he has continued to use his X account since the Relevant Terms took effect. Scolari Decl. ¶ 19. That is a binding online agreement under Ninth Circuit law, which asks



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

whether the user received "reasonably conspicuous notice" of the terms and took an action that "unambiguously manifests his or her assent." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also Doe v. X Corp.*, No. 25-cv-07597-TLT, 2025 WL 3500543, at *5-8 (N.D. Cal. Nov. 6, 2025) (transferring claims against X Corp. to the Northern District of Texas pursuant to the parties' agreement on forum); *Taddeo-Waite v. X Corp.*, No. 25-CV-00874, 2025 WL 3237422, at *2–4 (D. Conn. Nov. 20, 2025) (same).

The clause is also mandatory because it contains "language that clearly designates a forum as the exclusive one." *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995); *see Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763–64 (9th Cir. 1989). The Relevant Terms provide that covered disputes "*shall* be brought and *must* proceed *exclusively*" in the federal or state courts located in Wichita County or Tarrant County, Texas. Scolari Decl., Ex. A at 11 (emphasis added). The words "shall," "must," and "exclusively" leave no doubt that the parties agreed on a mandatory forum for any disputes.

**3. The Clause Encompasses Plaintiff's claim Against X Corp.**

The Relevant Terms reach all disputes "related to" the "Terms" or the "Services," "including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Services." Scolari Decl., Ex. A at 11. In the Ninth Circuit, "forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement," and "[t]he dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Sun*, 901 F.3d at 1086.

Here, there can be no dispute that Plaintiff's claim against X Corp. relates to his use of the X service. Plaintiff alleges that X Corp. participated in a "Censorship Industrial Complex," and he relies on a "Trump Genius" post that he published on X. Compl. ¶¶ 16, 18. That allegation is internally inconsistent, and Plaintiff does not explain how X Corp. engaged in censorship while Plaintiff was clearly able to post his content on X. But even so, the claim



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

relates to his use of the platform and is therefore covered by the Terms. And labeling his claim as one for "assault and battery" does not change the analysis. The forum-selection clause applies "regardless of whether a dispute or any claims * * * are based in contract, tort, statute, common law, or otherwise." Scolari Decl., Ex. A at 11.

### 4. Plaintiff Cannot Carry his "Heavy Burden" Under *Bremen*

To invalidate a clause for fraud or overreaching, the resisting party must show that "the inclusion of that clause in the contract was the product of fraud or coercion." *Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013) (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (en banc)). Plaintiff can show nothing of the kind. Nor is there any strong public policy that would prevent transfer of Plaintiff's claim to Texas. *Sun*, 901 F.3d at 1090. To the contrary, there is a "strong federal policy in favor of enforcing forum-selection clauses." *Id.* at 1089-90. Moreover, litigating in Texas will not "for all practical purposes" deprive Plaintiff of his day in court. *Id.* at 1088. Some inconvenience is inherent in any clause that requires litigation away from home, and that is not enough. Following *Atlantic Marine*, the Ninth Circuit has indicated that courts must enforce a valid clause "unless the contractually selected forum affords the plaintiffs no remedies whatsoever." *Id.* at 1091-92. The Northern District of Texas offers Plaintiff every remedy available in this Court.

### 5. The Public-Interest Factors Do Not "Overwhelmingly Disfavor" Transfer

When there is a valid forum-selection clause, only public-interest factors remain, and Plaintiff must show that they "overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. Those factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n. 6 (alterations and citation omitted). None disfavors transfer. This is not a localized Oregon controversy. Plaintiff resides in Washington, X Corp. is headquartered in Texas, and the challenged conduct concerns a nationwide platform. Compl. ¶¶ 4, 14, 16. The Relevant Terms select Texas law, *see* Scolari



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

Decl., Ex. A at 11, which a Texas federal court is best positioned to apply. Enforcing the parties' agreement would also relieve this Court of a claim that should have been filed elsewhere in the first instance.

**6. The Claim Against X Corp. Should Be Severed and Transferred**

Because the other defendants are not parties to the Terms, the Court should – if X Corp. is not dismissed from the case – sever the claim against X Corp. under Rule 21 and transfer only that claim. Rule 21 permits the Court to "sever any claim against a party," Fed. R. Civ. P. 21, and severance is the established means of enforcing a forum-selection clause that binds some defendants but not others. *See, e.g.*, *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403-05 (3d Cir. 2017); *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014); *GemCap Lending I, LLC v. Pertl*, No. 19-cv-1472, 2019 WL 6468580, at *12–14 (C.D. Cal. Aug. 9, 2019). Under that approach, the claims against the parties to the clause presumptively proceed in the contractual forum under *Atlantic Marine*, and the court then considers the interests of the non-contracting parties and whether severance would cause prejudice or inefficiency sufficient to outweigh the contracting parties' agreement. *Howmedica*, 867 F.3d at 403–05; *Rolls Royce*, 775 F.3d at 681; *GemCap Lending*, 2019 WL 6468580, at *12-14.

Each step of that analysis favors severance. First, as between Plaintiff and X Corp., *Atlantic Marine* controls. The private-interest factors are deemed to weigh entirely in favor of the contractual forum, and the public-interest factors do not disfavor transfer, let alone overwhelmingly. *See Atl. Marine*, 571 U.S. at 64, 67. Second, severance will not prejudice the remaining defendants. Plaintiff's claim against them will proceed in this Court exactly as it otherwise would. None of them will have to litigate in Texas or produce witnesses or documents there, so their private interests are unaffected. Third, severance will not sacrifice judicial economy, because the allegations against X Corp. share little if anything with those against the other defendants except the Complaint's conspiracy rhetoric. Plaintiff's allegations against X Corp. concern the operation of a social media platform. Compl. ¶ 16. His theory as to the



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

federal defendants concerns public-health officials' alleged failure to prevent and detect SARS-CoV-2, and his theory against Atlas Genomics concerns COVID-19 testing in Washington. *Id.* ¶¶ 9-13, 229-34. Even his allegations against Meta rest on Meta's own conduct, including the only specific moderation decision the Complaint describes. *Id.* ¶ 18. Resolving the claim against X Corp. therefore will not require the same evidence or witnesses as the claim against any other defendant.

Finally, the Northern District of Texas is a proper transferee forum. Section 1404(a) permits transfer "to any district or division to which all parties have consented," and Plaintiff and X Corp. consented to that forum in the Relevant Terms. Scolari Decl., Ex. A at 11. The Court should sever the claim against X Corp. and transfer it to the Northern District of Texas.

### C. The Complaint Fails to State a Claim Against X Corp.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is proper where a complaint lacks a "cognizable legal theory" or "sufficient facts alleged" to support one. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). *Pro se* pleadings are construed liberally, but they must still meet the plausibility standard. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010). Conclusory allegations are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678-81, and courts need not credit allegations that are "fanciful," "fantastic," or "delusional," *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992).

#### 1. The Complaint Violates Rule 8.

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The Ninth Circuit has affirmed dismissal of complaints that are "argumentative, prolix, replete with redundancy, and largely irrelevant," because such pleadings impose "unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1177–80 (9th Cir. 1996)



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

(53-page complaint); *see United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058–59 (9th Cir. 2011). Plaintiff's Complaint is 217 pages long, with an additional 262-page exhibit, and it is largely devoted to matters having nothing to do with X Corp., including COVID-19 death certificates, the 2020 election, World Health Organization funding, and historical epidemics. The roughly half-dozen passing references to X Corp. do not tell X Corp. what it allegedly did, when, or to whom. *See* Compl. ¶¶ 14, 16, 34, 311–12, 315; *id.* at 213.

**2. Plaintiff's Sole Count States No Claim Against X Corp.**

Plaintiff's only count is "Assault and Battery, 42 U.S.C. § 233(e)," Compl. at 167, and it cannot be maintained against X Corp. Section 233(a) makes the Federal Tort Claims Act ("FTCA") remedy against the United States exclusive for personal injury "resulting from the performance of medical, surgical, dental, or related functions * * * by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." 42 U.S.C. § 233(a). Section 233(e) provides only that the FTCA's intentional-tort exception, 28 U.S.C. § 2680(h), "shall not apply to assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions." 42 U.S.C. § 233(e). Neither subsection creates a cause of action against anyone.

X Corp. is the indirect subsidiary of a publicly traded company, the Space Exploration Technologies Corporation (SPCX). It is not part of the U.S. government or a Public Health Service officer or employee, and operating a social media platform is not a "medical, surgical, dental, or related function[]." 42 U.S.C. § 233(e). Indeed, Plaintiff himself alleges that the United States "is the sole entity liable for damage for assault or battery" under § 233(e). Compl. ¶ 6. He alleges that the "amount in this controversy * * * [is] to be borne exclusively by the United States." *Id.* ¶ 31. He asserts in his prayer that the § 233 remedy "is against the United States and is 'exclusive of any other civil action or proceeding.'" *Id.* at 212. His administrative claim was presented only to federal entities and does not mention X Corp. Compl., Ex. 1.



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

Even assuming § 233 could somehow be applied to a private company (which it cannot), Plaintiff has not plausibly alleged either assault or battery. Plaintiff's claimed injury is "chronic infection" with SARS-CoV-2, which he attributes to federal officials' failure to secure the border, conduct biosurveillance, and "pre-position[]" diagnostics. Compl. ¶¶ 229, 234, 316–18. He does not allege – nor could he – that X Corp. touched him, infected him, threatened him, or did anything at all to his person. The allegation that X Corp. was among the "narrative-aligned actors" who acted in "'medical' confederation" with Dr. Fauci, *id.* at 213, is a conspiratorial conclusion, not a plausible allegation of fact. *Iqbal*, 556 U.S. at 678-81; *Twombly*, 550 U.S. at 556–57.

Nor do the Complaint's other labels supply a claim. Plaintiff's allegation of "conspiracy-type participation" in a "Censorship Industrial Complex," Compl. ¶ 16, does not state a freestanding claim. Civil conspiracy is a means of holding a defendant liable for an underlying tort, and Plaintiff pleads none against X Corp. *See, e.g.*, *Bonds v. Landers*, 279 Or. 169, 174-75 (1977); *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 148 (Tex. 2019) (civil conspiracy "is a derivative tort that 'depends on participation in some underlying tort'" and "is not an independent tort"). His passing reference to the "defective designs" of X Corp.'s "social media products," Compl. ¶ 16, identifies no product defect, no injury caused by any defect, and no causal connection between X Corp. and the alleged harm for which he seeks relief. And the only failure to warn he alleges is that of "the United States." *Id.*

### 3. Section 230 and the First Amendment Bar Any Claim Premised on X Corp.'s Moderation of Content on Its Platform

There is no plausible factual allegation that X Corp. censored Plaintiff in any way, and Plaintiff's own allegations show that his content was posted to X. Compl. ¶ 18. However, to the extent Plaintiff seeks to hold X Corp. liable for "silencing and muting" him or labeling content as "misinformation," Compl. ¶ 18, Section 230 bars the claim. Section 230(c)(1) provides that no provider of an interactive computer service "shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It bars



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

any claim that (1) is brought against a provider of an interactive computer service, (2) treats the defendant as a publisher or speaker, (3) of information provided by another information content provider. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009). All three elements are met. Courts have consistently held that X is an interactive computer service. *See, e.g.*, *Brittain v. Twitter, Inc.*, No. 19-cv-00114-YGR, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019). Decisions about whether to publish, label, limit, or remove user content are quintessential publisher functions, because "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) (en banc). And the content at issue was created by Plaintiff and other users, not by X. *See Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020) (concluding that § 230(c)(1) bars claims arising from platform's removal of plaintiff's own pages).

The First Amendment independently forecloses liability for X Corp.'s editorial choices. When a platform decides which third-party content to display, label, or limit, it engages in expressive activity protected by the First Amendment. *Moody v. NetChoice, LLC*, 603 U.S. 707, 731–40 (2024). Plaintiff's apparent theory, that X Corp. should be liable in tort for how it moderated COVID-19-related speech, would impose liability for exactly that protected editorial judgment. *See Mac Isaac v. Twitter*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017).

**4. Amendment Would Be Futile**

If the Court reaches the merits, it should dismiss the claim against X Corp. with prejudice. *Pro se* plaintiffs ordinarily receive leave to amend, but not where "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). That standard is met here. Section 233 provides a remedy only against the United States, and Plaintiff has affirmatively pleaded that the United States is "the sole entity liable." Compl. ¶ 6. No additional facts could make X Corp. a



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

Public Health Service officer or employee, or make the operation of a social media platform a "medical, surgical, dental, or related function[]." 42 U.S.C. § 233(a). To the extent Plaintiff's grievance is with how X handled content on its platform, Section 230 and the First Amendment bar the claim as a matter of law, however it is pleaded.

### D. Plaintiff Cannot Represent a Class, and the Class Allegations Should Be Stricken

Plaintiff sues "[o]n [b]ehalf of [h]imself and [a]ll [o]thers [s]imilarly [s]ituated," and proposes a class of every U.S. citizen residing in the United States who has been infected with SARS-CoV-2, tested positive for its antibodies, or been diagnosed with COVID-19 since December 2019. Compl. at 1; *id.* ¶ 30. A non-lawyer "has no authority to appear as an attorney for others than himself," and courts in this Circuit do not permit *pro se* plaintiffs to prosecute class actions. *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664-65 (9th Cir. 2008). Plaintiff also cannot meet Rule 23(a)(4)'s adequacy requirement. To the extent any claim against X Corp. survives, the class allegations should be stricken as to X Corp. Fed. R. Civ. P. 23(d)(1)(D); *see also* Fed. R. Civ. P. 12(f).

// // //

// // //

// // //

// // //

// // //

// // //

// // //

// // //

// // //

// // //

// // //



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

**CONCLUSION**

For these reasons, X Corp. respectfully requests that the Court dismiss the claim against it for lack of personal jurisdiction. In the alternative, X Corp. requests that the Court sever the claim against it and transfer that claim to the United States District Court for the Northern District of Texas. If the Court reaches the merits, X Corp. requests that the Court dismiss the claim against it with prejudice and strike the class allegations as to X Corp.

DATED: October 22, 2026

LAW OFFICE OF NICHOLAS E. WHEELER, LLC

Nicholas E. Wheeler, OSB No. 044491
nick@nickwheelerlaw.com
Attorney for Defendant X Corp.



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served a true and correct copy of the foregoing **DEFENDANT X CORP.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** on the date indicated below by:

☐ mail with postage prepaid, deposited in the US mail at Portland, Oregon,

☐ courtesy copy also sent by email,

☐ hand delivery,

☐ facsimile transmission,

☐ overnight delivery,

☐ courtesy copy via email,

☒ **electronic filing notification.**

I further certify that said copy was delivered as indicated above and addressed to said attorney(s) at the address(es) listed below:

Emanuel McCray
400 W McLoughlin Boulevard,
Apartment 5
Vancouver, WA 98660
emanuel.mccray@hotmail.com
*Pro Se* Plaintiff

Peter D. Hawkes
Angeli & Calfo LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
peter@angelicalfo.com
Attorney for Defendant Meta Platforms, Inc.

DATED: October 22, 2026

Nicholas E. Wheeler



Law Office of Nicholas E. Wheeler, LLC
4800 Meadows Road, Suite 300
Lake Oswego, OR 97035
Telephone: (503) 486-4786
Facsimile: (503) 388-3475