**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON (PORTLAND)**

| | | |
|---|---|---|
| EMANUEL MCCRAY,<br>a/k/a "Trump Genius," *On Behalf of Himself and All Others Similarly Situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. **3:26-CV-01193-IM**<br><br>PLAINTIFFS' MOTION FOR RECONSIDERATION OF ECF NOS. 40, 41 & 42 PURSUANT TO RULE 60(b)(6), FEDERAL RULES OF CIVIL PROCEDURE |

**LR 7-1 CERTIFICATION NOT APPLICABLE**

**MOTION**

Plaintiff Emanuel McCray permitted the appearing defendants eleven (11) calendar days to mount a challenge to the entry and finality of ECF Nos. 40-42. As of November 16, 2026 and the face of the docket, no challenge to ECF Nos. 40-42 has been filed with the Court.

Plaintiff now moves the Court for relief from ECF Nos. 40, 41 and 42 as improvidently entered pursuant to Rule 60(b)(6) based on the following extraordinary circumstances, including "inadequate" and lack of facts:

1. Contrary to ECF No. 40, the Court did in fact have subject matter jurisdiction because the $400 trillion tort claim was properly presented to a "Federal agency" within the executive and legislative branches, as defined under 28 U.S. Code § 2671, before the Court's "March 23, 2025" deadline.

2. Contrary to ECF No. 40, the failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of 28 U.S. Code § 2675(a) and 28 U.S. Code § 2401(b).

3. Contrary to ECF No. 40, the Complaint is barred, pursuant to 28 U.S. Code § 2401(a), only if the complaint is not filed within six years after the right of action first accrues (the Court's "March 23, 2023" accrual date).

4. Contrary to ECF Nos. 8, 34 and 40, as early as June 16, 2026, Defendant United States of America made an appearance through the agency of U.S. Attorney Scott E. Bradford as "LEAD ATTORNEY" and "ATTORNEY TO BE NOTICED", who also used the following electronic mail addresses in CM/ECF: scott.bradford@usdoj.gov, CaseView.ECF@usdoj.gov, and jessica.biggers@usdoj.gov.

5. Contrary to ECF Nos. 8, 34 and 40, when Defendant United States of America made an appearance through the agency of U.S. Attorney Scott E. Bradford as "LEAD ATTORNEY" and "ATTORNEY TO BE NOTICED", this appearance had the legal effect of substituting the United States for the named Government Defendants.

6. Contrary to ECF No. 40, when Defendant Fauci exercised his "personal" constitutional rights "111" times on July 29, 2026, Defendant United States of America could not assert a personal privilege against self-incrimination and was required to give a response to the Complaint when appearing and substituting itself for Defendant Fauci.

7. Contrary to ECF Nos. 8, 34 and 40, when Defendant United States of America made an appearance through the agency of U.S. Attorney Scott E. Bradford as "LEAD ATTORNEY" and "ATTORNEY TO BE NOTICED", this appearance and substitution had the legal effect of rendering the case against the non-Government defendants moot under the Constitution's Article III, Section 2 cases and controversies requirement and would further preclude the court from reaching the underlying merits of a controversy involving these defendants and their common law civil conspiracy joint tort liability for COVID-19 assault and battery as alleged in the complaint.

8. Contrary to the reliance of ECF No. 40 on 28 U.S. Code § 2679 for its "exclusiveness of remedy" theory, 42 U.S. Code § 233(a) has its own "exclusiveness of remedy" procedures, among other procedures exempted from 28 U.S. Code Chapter 171 Part VI - Tort Claims Procedure. Nothing suggests that Congress intended § 2679(b) to repeal § 233(a)'s more comprehensive immunity scheme.

9. The Clerk was without power and authority to deny issuance of Summons directed to Defendant United States of America on July 6, 2026. See ECF No. 32 at 6.

10. The Clerk was without power and authority to delay entry of default pursuant to Rule 55(a). See ECF Nos. 18, 20, 26 and 28.

11. The Clerk was without power and authority to delay entry of default judgment as to Defendant Atlas Genomics, LLC pursuant to Rule 55(b)(1). See ECF Nos. 38 and 39.

12. Contrary to ECF 31 at 2, which states that "LR 7-1(e)(1) allows a party to 'file and serve any response within 14 days after service of the Motion'", nothing in LR 7-1(e)(1) conflicts with, or trumps the mandatory and ministerial nature of Rule 55(a) and Rule 55(b)(1). See ECF No. 32 at 9.

13. Contrary to ECF Nos. 41 and 42, Defendants Meta and X Corp. were not entitled to immunity from suit under section 230 for their conspiratorial conduct

in support of the COVID-19 pandemic when "falsely characterize[ing] a "Trump Genius" Tweet about the Academy Awards/Oscars as COVID-19 pandemic "misinformation" and "false information".

14. Contrary to ECF Nos. 41 and 42, Defendants X Corp. and Meta were not entitled to a ruling on the merits given the appearance and substitution of Defendant United States of America for the tortious conduct of all defendants and Article III of the U.S. Constitution.

In support of this Motion, Plaintiff relies upon the record in general, and specifically on ECF Nos. 6, 12, 17-20, 24-29, 32, and 37-39.

A Memorandum of Law accompanies this Motion.

Dated this 16th day of November 2026.

________________________

Emanuel McCray
*Plaintiff, Pro Se*

## MEMORANDUM OF LAW

## I. LEGAL STANDARD

### A. Presentment of $400 Trillion Tort Claim

The presentment timeline for the $400 trillion tort claim, which defeats the Court's erroneous ruling in ECF 40 ("March 23, 2025"), was completed by the U.S. Postal Service on March 13, 2025, and is shown as follows:

**The Honorable Pamela Jo Bondi, United States Attorney General (February 28, 2025)**, USPS Tracking Number: 420205309505506671715055006465

**The Honorable William Narus, Acting U.S. Attorney Portland, OR (March 3, 2025),** USPS Tracking Number: 9505506671715060007921

**The Honorable Teal Luthy Miller, Acting U.S. Attorney Seattle, WA (March 3, 2025),** USPS Tracking Number: 420981019505506671715060007945

**The Honorable James Michael Johnson, Speaker of the House** (**February 27, 2025**), USPS Tracking Number: 420205159505506671715055006526

**The Honorable Charles Ernest Grassley, U.S. Senate President Pro Tempore (February 27, 2025),** USPS Tracking Number: 420205109505506671715055006502

**National Security Council (March 5, 2025),** USPS Tracking Number: 420205009505506671715055006427

**The White House Office (March 5, 2025),** USPS Tracking Number: 420205009505506671715055006540

The Honorable Robert F. Kennedy, Jr., Secretary U.S. Health and Human Services **(February 28, 2025),** USPS Tracking Number: 420202019505515037425057518210

Chairwoman Marjorie Taylor Greene, Delivering on Government Efficiency ("DOGE"), U.S. House of Representatives **(February 27, 2025),** USPS Tracking Number: 420205159505506671715055006441

The Honorable Chris Wright, Secretary U.S. Department of Energy **(February 28, 2025),** USPS Tracking Number: 420205859505515037425057518234

The Honorable Kash Patel, Director Federal Bureau of Investigation **(March 3, 2025),** USPS Tracking Number: 420205359505515037425057518258

The Honorable Tulsi Gabbard, Director of National Intelligence **(March 3, 2025),** USPS Tracking Number: 420205119505515037425057518197

The Honorable John L. Ratcliffe, Director Central Intelligence Agency **(March 3, 2025),** USPS Tracking Number: 420205059505515037425057518173

The Honorable Elon Musk, Department of Government Efficiency ("DOGE") **(March 5, 2025),** USPS Tracking Number: 420205009505515037425057518159

U.S. Office of Special Counsel **(March 10, 2025),** USPS Tracking Number: **420200369505515037415064989912**

U.S. Health and Human Services **(March 10, 2025),** USPS Tracking Number: **420202019505515037415064989851**

U.S. Department of Agriculture **(March 10, 2025),** USPS Tracking Number: **420202509505515037415064989837**

The Honorable Charles Ernest Grassley, U.S. Senate President Pro Tempore **(March 10, 2025),** USPS Tracking Number: **420205109505515037415064989813**

The Honorable James David Vance, President of the United States Senate **(March 13, 2025),** USPS Tracking Number: **420205009505515037415064989899**

**B. Subject-Matter Jurisdiction**

28 U.S. Code § 2671 provides in relevant part that:

"As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States."

The face of the $400 trillion tort claim lists the official descriptions of two Executive and two Congressional entities covered by the face of 28 U.S. Code § 2671 and the face of 42 U.S. Code § 233(a), which cites "sections 1346(b) and 2672 of title 28". In turn, 28 U.S. Code § 1346(b) cites "chapter 171 of this title [28]".

After properly presenting their claim to a federal agency within two years, Plaintiffs enjoyed the benefits of 28 U.S. Code § 2675(a) and 28 U.S. Code § 2401(b) after the federal agency failed to make a final disposition of the $400 trillion tort claim within six months after it was filed.

Pursuant to 28 U.S. Code § 2401(a), the complaint, which was filed on June 12, 2026, was only barred if it was filed six years after the right of action first

accrued (the Court's "March 23, 2023" accrual date), or after Friday, March 23, 2029. Claim accrual is governed by federal law. See *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir. 1999).

The court's use of labels such as "frivolous", "patently insubstantial" and "factual frivolousness", among others, could not rise to the level of dismissal with prejudice and denial of leave to amend, without throwing four very important facts under the rug: the appearance of the United States on the docket as early as June 16, 2026; the failure of the court to explain this appearance; the failure of the U.S. Attorney to explain his understanding of this appearance; and the effect of ECF 40 on the response due by the United States and CMS by November 20, 2026 and the response due by Defendant Fauci by November 24, 2026.

In the "1902 Biologics Control Act" to which the Court referred, Congress brought the human manipulation of deadly viruses, etc., and the commerce thereof, under its congressional authority.

Differently stated, Congress had a direct, transparent role in setting in to motion the human manipulation of deadly viruses and the funding of research of the same as early as 1902.

"Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court." *Frigard v. United States,* 862 F.2d 201, 204 (9th Cir. 1988) (per

curiam), citing *Black v. Payne,* 591 F.2d 83, 86 (9th Cir.), *cert. denied,* 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979).

Here, the single tort claim was not subject to dismissal with prejudice and did not strip the court of its subject-matter jurisdiction, as a matter of law.

**B. June 16, 2026 Appearance By Defendant United States of America**

Under *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 351 (1999), "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."

"When an attorney of record appears in an action for one of the parties, his authority, in the absence of any proof to the contrary, will be presumed. A record which shows such an appearance will bind the party until it is proven that the attorney acted without authority." *Hill v. Mendenhall,* 88 U.S. 453, 454 (1874). See also *Doraleh Container Terminal SA v. Republic of Djibouti,* 109 F.4th 608, 611 (D.C. Cir. 2024) ("Such authority is presumed".).

Where the record shows Defendant United States made a "voluntary appearance" through U.S. Attorney Bradford appearing on the docket dated June 16, 2026, and "[i]f this appearance was authorized, it is as effective for the purposes of jurisdiction as an actual service of summons." *Hill*, 88 U.S. at 454.

Where record evidence raises a substantial question concerning counsel's authority, the court should determine whether the representation was authorized. *Doraleh,* 109 F.4th at 611, citing *Pueblo of Santa Rosa v. Fall,* 273 U.S. 315, 319 (1927).

For an attorney to represent another in Court, that attorney's "power must indeed exist". *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 830 (1824).

ECF 40 placed an unconstitutional gag order on many of the functions of the Attorney General and his representatives set forth by Congress in 28 U.S. Code Chapter 31, Part II.

For example, with the exception of certain listed functions, "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General…." 28 U.S. Code § 509. See also 28 U.S. Code §§ 512, 516 through 519 and 528. A District Court is without authority to step into the shoes of the U.S. Attorney, even if it appointed the U.S. Attorney, as was done in Portland with Bradford.

**C. Party Presentation**

ECF 40, in addition to preempting/gagging the Government's response to the complaint, also violated the principle of party presentation. *United States v.*

*Sineneng-Smith,* 590 U.S. 371 (2020) and *Greenlaw v. United States,* 554 U.S. 237 (2008).

Because § 233(a) refers only to "[t]he remedy . . . provided by sections 1346(b) and 2672" only those portions of the FTCA that establish its remedy are incorporated by § 233(a)'s reference to § 1346. Section 2679(b) is not such a provision." *Hui v. Castaneda,* 559 U.S. 799 (2010). The Court lacked a complete briefing by the United States on this provision applicable to Plaintiff's claim.

In addition to the principle of party presentation, "[c]ourts must prevent the judicial process from being 'used for the purpose of vexation or fraud.'" *Doraleh Container Terminal SA v. Republic of Djibouti,* 109 F.4th 608, 611 (D.C. Cir. 2024), citing *Pueblo of Santa Rosa v. Fall,* 273 U.S. 315, 319 (1927) (quoting *The King of Spain v. Oliver,* 14 F. Cas. 577, 578 (C.C.D. Pa. 1810) (No. 7,814).

On October 8, 2026, Attorney Nicholas Wheeler filed "Declaration of Bradley P. Humphreys in Support of Defendant X Corp.'s Motion to Set Aside Entry of Default" (Decl. Humphreys). See ECF 22.

Decl. Humphreys contained several gaps and nuances and was insufficient in reply to the Motion for entry of default as to Defendant X Corp. For example, Decl. Humphreys made these statements, among others:

> "5. On or about September 18, 2026, X Corp. attempted to transmit to me by email the proof of service, summons, and Complaint. I did not receive that email because the size of the attached documents exceeded

> the size limit for incoming emails in my firm's email system. I have since reviewed that email."
>
> "4. I did not receive actual notice that X Corp.'s registered agent had been served until the evening of October 6, 2026, when I became aware of Plaintiff's Motion for Clerk's Entry of Default (ECF No. 19)."
>
> "7. Immediately upon learning of the service and of Plaintiff's motion, I took steps to appear and to prepare X Corp's Motion to Set Aside Entry of Default, which is being filed on October 8, 2026."

As to ¶ 5, X Corp. lacks volition to attempt to transmit an email. Decl. Humphreys does not disclose the identity of the human agent behind this attempt, nor does the Declaration disclose when Humphreys "since reviewed that email."

As to ¶ 4, Decl. Humphreys does not provide a clue as to whether Humphreys had constructive notice that "X Corp.'s registered agent had been served", nor how Humphreys "became aware of Plaintiff's Motion for Clerk's Entry of Default" on "the evening of October 6, 2026".

As to ¶ 7, Decl. Humphreys states that "[i]mmediately upon learning of the service and of Plaintiff's motion, I took steps to appear", while failing to explain why X Corp. made no effort to place an appearance on the docket, notwithstanding the fact that "[o]n or about September 18, 2026", X Corp. attempted to transmit "by email the proof of service, summons, and Complaint."

On October 22, 2026, Attorney Nicholas Wheeler filed "Declaration of Megan Scolari in Support of Defendant X Corp.'s Motion to Dismiss" (Decl. Scolari). See ECF 36.

Decl. Scolari contained several gaps and nuances. For example, Decl. Scolari made the following statement:

> "8. Based on my investigation to date and my review of the Complaint, I understand that Plaintiff created the account @Trumpgenius2 on August 31, 2017."

As to ¶ 8, Decl. Scolari indicates Scolari conducted a "review of the Complaint" and that this review led Scolari to conclude the "Terms of Service" were at issue in the Complaint, when in fact the Complaint dealt with X Corp.'s membership role as a member of the COVID-19 homicide conspiracy and the Censorship Industrial Complex. Nothing in the Complaint was capable of informing Scolari that the "terms of service" were at issue and that X Corp. violated its contractual obligations in a manner that involved the "terms of service".

**D. Oregon's Common Law Civil Conspiracy**

In 1932, the Oregon Supreme Court adopted its definition for a conspiracy in a civil action. In *Bliss v. Southern Pacific Co.,* 212 Or. 634, 642 (Or. 1958), the definition was explained:

> "A conspiracy is a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose or to accomplish some purpose not in itself criminal by unlawful means."

The *Bliss* Court further explained that "[t]he primary purpose of a conspiracy must be to cause injury to another." Plaintiffs identified the underlying actionable tort as assault and battery under 42 USC § 233(e). See also the Ninth Circuit's decision in *Gibson v. City of Portland,* 165 F.4th 1265, 1291 (9th Cir. 2026) which strongly targets "shotgun pleadings".

The complaint set forth detailed allegations with regards to the civil conspiracy. For example, ¶ 16 alleged "Defendants X Corp. and Meta are sued for their direct roles involving their conspiracy-type participation in (1) the COVID-19 pandemic "Censorship Industrial Complex" deployed by the United States and other Nations…." See also ¶¶ 17-20, 35(2), 35(6), 35(25), 173-174.

As to fraudulent concealment, see ¶¶ 35(21), 181, 280 and 290 (discussing "The Proximal Origin of SARS-CoV-2" publication), and ¶¶ 147-182 (discussing the withholding of classified information and the failure of the "global confederation" "to place in dispute whether the virus exists at all to support the use of PL 115-92 by the United States through the HHS, DOD, Moderna and others." Also see *Conmar Corp. v. Mitsui & Co.* (U.S.A.), Inc., 858 F.2d 499 (9th Cir. 1988) (explaining that affirmative acts of concealment may toll statute of limitations) and *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406 (9th Cir. 1987) (same).

As to the criminal nature of an assault under Oregon law, see ¶¶ 127-128, 140, 145, 212, 223-336.

**E. Rule 60(b)(6) Relief Is Warranted**

ECF Nos. 40, 41 and 42 strongly indicates that the Court proceeded on inadequate facts.

A party seeking relief under Rule 60(b)(6) must satisfy three requirements. The motion cannot be premised on another ground delineated in the Rule, see *Liljeberg v. Health Serv. Acquisition Corp.,* 486 U.S. 847, 863 & n.11 (1988); it must be filed "within a reasonable time," see Fed. R. Civ. P. 60(c)(1); and it must demonstrate "extraordinary circumstances" justifying reopening the judgment, see *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 393 (1993).

Extraordinary circumstances occur where there are "other compelling reasons" for opening the judgment. *Klapprott v. United States,* 335 U.S. 601, 613 (1949). *Bynoe v. Baca,* 966 F.3d 972, 979 (9th Cir. 2020) (internal quotations and citations omitted).

Second, Plaintiff filed this motion on October 16, 2026, eleven days after the entry of ECF Nos. 40-42 were filed on November 5, 2026. This motion is therefore timely. See *Bynoe,* 966 F.3d at 981 (finding timely a Rule 60(b)(6) motion filed less than seven months after the decision providing the basis for the motion).

Third, extraordinary circumstances justify modifying ECF Nos. 40-42 in the manner Plaintiff requests. Critical allegations in the Complaint are undenied. The Court completely stripped the Government defendants of their right to respond to the complaint by November 20, 2026 (United States and CMS) and November 24, 2026 (Fauci).

The Government, Meta and X Corp. have not filed any motions to cause the modifications of ECF Nos. 40-42 in their favor.

As the service of the $400 trillion tort claim strongly indicates, the Court's facts were inadequate to support entry of ECF Nos. 40-42.

Moreover, if the Government had been allowed to introduce facts that expanded upon ECF No. 6, it is doubtful ECF Nos. 40-42 would have been entered.

Further, Fauci was issued a Presidential Pardon. On July 29, 2026, he was advised by Counsel, and he did indeed, invoked his personal constitutional rights against self-incrimination "111 times". There is the presumption of doubt that Fauci would waive these extraordinary protections and subject himself to criminal liability in States and Federal courts by responding to the Complaint.

Finally, the very best set of facts, proofs and evidence necessary for the Court to understand the Complaint's core allegations that agents for the United States involved themselves in a global conspiracy to carry out mass homicide and attempted mass homicide using a weaponized biological agent known as "SARS-

COV-2", remains in the hands of, and under active fraudulent concealment, by the Government Defendants, Meta and X Corp. See, e.g., Complaint ¶¶ 151-155, 164 and Prayer discussing §6803 of Public Law 119-60, div. F, title LXVIII, and the failure of the Government to disclose COVID-19 intelligence information to Plaintiffs and the public as ordered by Congress who had a funding role in the global pandemic's conspiracy and Defendant CMS's CLIA labs used to promote and conceal the COVID-19 injury narratives:

> "(7) Direct the United States provide to the Court and to Plaintiffs, copies of the declassified "COVID-19" intelligence mandated under Public Law 119-60, div. F, title LXVIII, §6803(3), which is/was due not later than June 16, 2026, see supra, ¶¶ 151-155, 164…."

These are "extraordinary circumstances." Unlike the Defendants, Movant exercised diligence in pursuing reconsideration of ECF Nos. 40-42 (within 11 days). The facts relied upon by the court, *sua sponte*, were "inadequate" to support finality and a final judgment. *Klapprott v. United States*, 335 U.S. 601, 615 (1949).

## REQUESTED RELIEF

The Court should (1) resume subject-matter jurisdiction; (2) vacate ECF Nos. 40, 41 and 42; (3) declare Defendant United States appeared and effectuated substitution under 42 USC § 233(a); (4) enter default as to Defendant United States of America as previously requested for failure to defend; (5) dismiss all remaining

defendants without prejudice pursuant to the United States' statutory substitution under 42 USC § 233(a).

Submitted respectfully,

Emanuel McCray
Emanuel McCray